## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ANGELA WILSON,

        Plaintiff,

v.                                                                     No. CV 20-1066 CG

KILOLO KIJAKAZI,[1]
Commissioner of the
Social Security Administration,

        Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Angela Wilson's *Opposed Motion to Reverse and/or Remand* (the "Motion"), (Doc. 25), filed June 25, 2021; Defendant Commissioner Kilolo Kijakazi's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 28), filed August 24, 2021; and Ms. Wilson's *Reply in Support of Motion to Reverse and/or Remand* (the "Reply"), (Doc. 29), filed September 6, 2021.

In her Motion, Ms. Wilson asks the Court to reverse the Commissioner's decision denying Social Security benefits, and to remand this case with instructions to award benefits back to "at least 06/30/2010." (Doc. 25 at 26). The Administrative Law Judge ("ALJ") in this case found Ms. Wilson disabled as of September 1, 2016. (Administrative Record "AR" 11). The parties disagree only about whether the ALJ reasonably concluded that Ms. Wilson was not disabled between June 30, 2010, when her insured status for Disability Insurance Benefits ("DIB") expired, and September 1, 2016. (Doc.

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021.

28 at 1).

The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Gontis erred in his failure to properly consider the sleep apnea evidence, the Court finds Ms. Wilson's Motion shall be **GRANTED IN PART**, and this case shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion. Ms. Wilson's request for an immediate payment of benefits is **DENIED**.

## I.    Procedural History

Ms. Wilson originally filed an unsuccessful application for DIB in 2006, but declined to appeal the denial of that application. (AR 603); *see* (Doc. 25 at 2). She filed the operative applications for DIB and supplemental security income ("SSI") on January 30, 2012, alleging disability beginning December 15, 2005. (AR 565, 841). In this application, Ms. Wilson claimed she was unable to work due to a knee injury, an ankle injury, diabetes and foot weakness. (AR 565). This is the second time Ms. Wilson has challenged the denial of her Social Security benefits before this Court; the prior case was subject to unopposed remand. *See Wilson v. Saul*, 2:19-cv-380 CG (D.N.M. 2019) (Doc. 19); (Doc. 21).

### A.  First Hearing

Ms. Wilson's original application was denied initially on March 26, 2012, and upon reconsideration on May 30, 2012. (AR 569, 586). Ms. Wilson requested a hearing before an ALJ, which was held on July 29, 2013, before ALJ Valencia Jarvis. (AR 603, 610). At the hearing, Ms. Wilson appeared before ALJ Jarvis with her attorney James S. Elkins, and impartial Vocational Expert ("VE") Lorin Charles Lovely. (AR 603). ALJ

Jarvis issued an unfavorable decision on October 10, 2013, finding Ms. Wilson not disabled at any time between the alleged disability onset date and the date of her decision. (AR 609-610).

Ms. Wilson requested review of ALJ Jarvis's decision before the Appeals Council, which was granted on February 4, 2015. (AR 619). The Appeals Council vacated ALJ Jarvis's decision and remanded the case for another hearing, under the substantial evidence provision of 20 C.F.R. §§ 404.970 and 416 1470. (AR 617-619). The Appeals Council stated that the decision improperly weighed the findings of a single decision maker, did not adequately address opinion evidence from treating physician Dr. Simmons, and improperly characterized Ms. Wilson's past relevant work. (AR 617-618). On remand, the Appeals Council instructed ALJ Jarvis to, among other things, give further consideration to Ms. Wilson's residual functional capacity ("RFC"), and in so doing further evaluate the opinion of Dr. Simmons, and to give further consideration to whether Ms. Wilson has any past relevant work that she is capable of performing. (AR 618).

### B. Second Hearing

Ms. Wilson appeared before ALJ Jarvis for a second time on January 19, 2017, with her attorney Gary Martone, and impartial VE Pamela C. Leggett. (AR 625). ALJ Jarvis issued a partially favorable decision on May 24, 2017, finding that Ms. Wilson was disabled beginning on September 2, 2011, which date is after her insured status for DIB expired.[2] (AR 635); (Doc. 28 at 1).

---

[2] In order to qualify for DIB, a claimant must establish that she met the statutory requirements for disability on or before her date last insured. *See* 42 U.S.C. §§ 416(i)(3), 423(c)(1); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). Without this showing, a claimant's disability may only qualify them for SSI. *See, e.g., Reyes v. Berryhill*, 1:18-cv-576 SCY, 2019 WL 2223671

Ms. Wilson requested review of ALJ Jarvis's decision before the Appeals Council, which was granted on January 9, 2018. (AR 645). The Appeals Council vacated ALJ Jarvis's decision for a second time and remanded the case for another hearing before a different ALJ, under the substantial evidence provision of 20 C.F.R. §§ 404.970 and 416 1470. (AR 643-645). The Appeals Council stated that the decision improperly relied upon Medical-Vocational ("Grid") Rule 201.14 to find that Ms. Wilson was disabled upon turning 50 years old due to her ability to perform reduced light work, when Grid Rule 201.14 only applies to those with an RFC for sedentary work. (AR 644). The Appeals Council also stated that the ALJ improperly relied on VE Leggett's assertion that Ms. Wilson could perform jobs that were skilled without testimony that Ms. Wilson had acquired the necessary transferable skills from past relevant work. (AR 644). On remand, the Appeals Council instructed the new ALJ to, among other things, obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on Ms. Wilson's occupational base, and to determine whether Ms. Wilson has acquired any transferable skills from past relevant work. (AR 644).

*C. Third Hearing*

Ms. Wilson waived personal appearance at the June 19, 2018 hearing before ALJ Ben Ballengee. (AR 10). Her attorney Gary Martone appeared and argued the case, and impartial VE Teri Hewitt also appeared and testified. (AR 10). ALJ Ballengee issued a partially favorable opinion on August 16, 2018, finding that Ms. Wilson was disabled beginning September 1, 2016, which date is after her insured status for DIB had expired. (AR 21); (Doc. 28 at 1). Ms. Wilson requested review of ALJ Ballengee's

---

(D.N.M. May 23, 2019) (ALJ awarded SSI but not DIB based on onset date of disability under Grid Rule).

decision before the Appeals council, which was denied on April 11, 2019. (AR 1).

In June of 2019, Ms. Wilson appealed the Commissioner's decision to the United States District Court for the District of New Mexico. *See generally Wilson v. Saul*, 2:19-cv-380 CG. At around the same time, Ms. Wilson submitted new and material evidence to the Appeals Council, which issued an order vacating its April 2019 order and remanding the case, but by then the Appeals Council lacked jurisdiction due to the pending complaint before this Court. (AR 2112). The Appeals Council therefore vacated its June 2019 order, and the Commissioner filed an unopposed motion to remand. (AR 2108, 2112); *Wilson v. Saul*, 2:19-cv-380 CG (D.N.M. 2019) (Doc. 19). On October 17, 2019, the Court granted the Commissioner's unopposed motion to remand the case pursuant to sentence four of 42 U.S.C. § 405(g). *Wilson*, 2:19-cv-380 CG (Doc. 21).

In its December 23, 2019 order remanding, the Appeals Council affirmed ALJ Ballengee's finding that Ms. Wilson was disabled beginning September 1, 2016, and vacated ALJ Ballengee's decision with respect to the issue of disability before that date. (AR 2118). The Appeals Council remanded the case for further proceedings on the issue of disability before September 1, 2016. (AR 2118). The Appeals Council explained that it had received additional evidence, including 390 pages of medical records from 2017-2019. (AR 2118). They stated that these records included a sleep study which showed Ms. Wilson suffers from "severe obstructive sleep apnea-hypoapnea" and "periodic limb movements of sleep." (AR 2118). They also indicated the records included mental health assessments, and treatment records which indicate a "long history of mental illness," described as "chronic." (AR 2118). The Appeals Council stated these records noted "past trials of various medications without successful

5

alleviation of symptoms." (AR 2118).

On remand, the Appeals Council instructed the new ALJ to, among other things, obtain additional evidence to complete the administrative record in accordance with the regulatory standards, further evaluate the claimant's mental impairments, give further consideration to Ms. Wilson's maximum RFC and provide specific references to evidence of record in support. (AR 2119). The Appeals Council also instructed the ALJ to, "[i]f warranted by the expanded record, obtain evidence from a VE to clarify the effect of the assessed limitations on the claimant's occupational base," with hypothetical questions reflecting "the specific capacity/limitations established by the record *as a whole*." (AR 2119) (emphasis added).

### D. Fourth Hearing

A fourth hearing was held on May 8, 2020, before ALJ Stephen Gontis. (AR 2014). At the hearing, held telephonically during the covid-19 pandemic, Ms. Wilson appeared with her new attorney Benjamin E. Decker, and VE Nicole B. King. (AR 2002). ALJ Gontis issued a partially favorable decision on June 19, 2020, finding again that Ms. Wilson was not disabled prior to September 1, 2016, which date is after her insured status for DIB had expired. (AR 2014); (Doc. 28 at 1). Pursuant to 20 C.F.R. § 404.984, this decision by ALJ Gontis is the final decision of the Commissioner.

Ms. Wilson, now represented by her attorney Benjamin E. Decker, argues ALJ Gontis erred in four respects: (1) he ignored the opinion of Ms. Wilson's treating psychiatrist, Corey Barger, MD, on the disability onset date; (2) he failed to properly consider Ms. Wilson's severe obstructive sleep apnea; (3) he failed to properly consider the full extent of Ms. Wilson's receipt of support in managing her life from a therapist,

psychiatrist and social worker; (4) he erred by considering the findings of the state agency consultants; and (5) he improperly weighed the opinions of treating providers James Gillies, PhD, and Dr. Barger. (Doc. 25 at 28). Due to the protracted nature of Ms. Wilson's case, she also argues that the Court should remand for an immediate payment of benefits. *Id.* at 25-30.

## II.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018). Therefore, when the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353

F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington*, 37 F.3d at 1439). However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted).

### III.   Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 42 U.S.C. 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1.; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520 (a)(4)(i–iv), 416.920(a)(4)(i-iv); *see also Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV.   Background

In her applications, Ms. Wilson claimed she was limited in her ability to work due to a knee injury, an ankle injury, diabetes and foot weakness. (AR 565). At step one, ALJ Gontis determined Ms. Wilson had not engaged in substantial gainful activity since December 15, 2005, the alleged disability onset date. (AR 2005). At step two, ALJ Gontis found Ms. Wilson had the severe impairments of degenerative joint disease of

the knees and the right ankle, obesity, depression and anxiety. (AR 2005).

At step three, ALJ Gontis determined Ms. Wilson's impairments, solely or in

combination, did not meet or equal one of the listed impairments in 20 C.F.R.

§§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 or 416.926. (AR 2006). ALJ

Gontis then found Ms. Wilson has had the RFC to perform "less than the full range of

light work" from December 15, 2005 forward. (AR 2007). ALJ Gontis elaborated:

> Specifically, the claimant is limited to lifting and/or carrying up to 20 pounds
> occasionally and 10 pounds frequently, and she is limited to sitting up to 6 hours
> and standing and/or walking up to 4 hours in an 8-hour workday. The claimant
> can no more than occasionally climb ramps, stairs, ladders, ropes, or scaffolds,
> balance, stoop, kneel, crouch, or crawl. The claimant is limited to occasional
> exposure to significant dust, odors, fumes and pulmonary irritants, to extreme
> cold, and to significant vibration. The claimant is limited to more than simple but
> less than complex tasks, consistent with semiskilled work. She can no more than
> frequently interact with supervisors, coworkers, and the public. She can tolerate
> few changes in a routine work setting. She requires time off task that can be
> accommodated with normal breaks.

(AR 2007). In formulating Ms. Wilson's RFC, ALJ Gontis stated he considered her

symptoms and the extent to which those symptoms could reasonably be accepted as

consistent with objective medical and other evidence, as required by 20 C.F.R.

§§ 404.1529, 416.929 and Social Security Ruling ("SSR") 16-3p. (AR 2007). ALJ Gontis

stated he also considered opinion evidence, consistent with the requirements of 20

C.F.R. §§ 404.1527 and 416.927. (AR 2007).[3] He concluded that while Ms. Wilson's

impairments could be expected to cause her alleged symptoms, the intensity,

---

[3] The agency issued new regulations regarding the evaluation of medical source opinions for
claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of
Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); *compare* 20
C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017"), *with*
20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior
administrative medical findings for claims filed on or after March 27, 2017"). Because Ms.
Wilson filed her claim on January 30, 2012, the prior regulations apply to this matter.

persistence, and limiting effects Ms. Wilson described were not entirely consistent with the evidence in the record. (AR 18).

In evaluating the evidence, ALJ Gontis afforded "little weight" to the March 23, 2020 opinion of treating psychiatrist Dr. Barger, and the March 19, 2020 opinion of treating psychologist Dr. Gillies. (AR 2011). In particular, he found that both of these providers treated Ms. Wilson for a year or less, and did not begin treating her until several years after the relevant period. (AR 2011). Further, he found that their conclusions were "inconsistent with the medical evidence of record." (AR 2011). ALJ Gontis also afforded "limited weight" to the June 1, 2006 opinion of state agency psychological consultant Carol Deatrick, PhD, as "more recent evidence supports a finding that the claimant's mental impairments are severe and cause significant limitations." (AR 2011).

ALJ Gontis afforded "partial weight" to the opinion of state agency psychological consultant Majid Shams, PhD, saying he found it was "vague, conclusory, and does not appear to be supported by her findings" at the examination nor with the "longitudinal evidence" as a whole. (AR 2011). Finally, ALJ Gontis afforded "great weight" to the May 27, 2012 opinion of state agency medical consultant Sunita Patel, MD, saying that her opinion is consistent with and supported by the medical record. (AR 2011).

At step four, ALJ Gontis found Ms. Wilson has been incapable of performing her past relevant work in banquet setup since December 15, 2005. (AR 2012). ALJ Gontis proceeded to step five, finding that on September 1, 2016, Ms. Wilson's age category changed to "an individual of advanced age." (AR 2012). He further found that Ms. Wilson has at least a high school education and can communicate in English. (AR

2012). ALJ Gontis found that prior to September 1, 2016, considering VE King's testimony and Ms. Wilson's age, education, work experience, and assessed RFC, that Ms. Wilson could have performed other work as an assembler or electronics assembler. (AR 2013). After finding Ms. Wilson was able to perform other work existing in significant numbers in the national economy prior to September 1, 2016, ALJ Gontis concluded she was "not disabled" as defined by 20 C.F.R. §§ 404.1520(g) and 416.920(g) prior to that date. (AR 42).

### V.    Analysis

In her Motion, Ms. Wilson presents five arguments regarding error. *See* (Doc. 25). First, she contends ALJ Gontis improperly ignored the opinion of Ms. Wilson's treating psychiatrist, Dr. Barger, regarding the disability onset date. *Id.* at 25. Second, Ms. Wilson argues that ALJ Gontis failed to properly consider her severe obstructive sleep apnea in evaluating her symptom allegations. *Id.* at 26. Third, she maintains that ALJ Gontis failed to meaningfully consider the full extent of her treatment with a therapist, psychiatrist, and social worker to manage her life, including "constant therapy and psychiatric appointments" and utilizing a social worker to complete activities of daily living such as talking to her doctors and landlord. *Id.* at 27. Fourth, she contends ALJ Gontis improperly considered the findings of Dr. Patel and Dr. Deatrick, despite the Appeals Council's explicit instructions not to do so. *Id.* at 28. Finally, Ms. Wilson argues that ALJ Gontis failed to apply the treating physician standard in weighing the opinions of Dr. Barger and Dr. Gillies. *Id.* Ms. Wilson also argues that the Court should remand for an immediate payment of benefits, due to the protracted nature of her case. *Id.* at 25-30.

In response, the Commissioner maintains that ALJ Gontis reasonably gave little weight to Dr. Barger's opinion, as he only treated Ms. Wilson for approximately eight months in 2019 and 2020. (Doc. 28 at 10). The Commissioner argues that ALJ Gontis reasonably addressed Ms. Wilson's sleep apnea, and reasonably concluded it did not affect her functioning. *Id.* at 12-13. Next, the Commissioner contends that ALJ Gontis reasonably evaluated Ms. Wilson's mental health treatment, given his discussion of the evidence of mild symptoms, responsiveness to therapy, and normal findings. *Id.* at 13. Further, the Commissioner alleges that Dr. Patel and Dr. Deatrick are not single decision makers, as they are not "nonmedical sources who complete physical residual functional capacity forms for the initial grant or denial of an application," but instead are a state agency medical and psychological consultant, respectively. *Id.* at 16. Finally, the Commissioner contends that ALJ Gontis reasonably evaluated Dr. Barger's and Dr. Gillies's opinions, as they did not begin to treat Ms. Wilson until well after the relevant period. *Id.* at 17. As such, the Commissioner maintains that ALJ Gontis's decision should not be reversed, and that Ms. Wilson is thus not entitled to an immediate award of benefits for the relevant period. *Id.* at 19-20.

*A.  ALJ Gontis's Consideration of the Evidence*

Ms. Wilson argues that ALJ Gontis failed to meaningfully consider her severe obstructive sleep apnea in evaluating her symptom allegations. (Doc. 25 at 26). She argues that ALJ Gontis never mentioned the two 2017 sleep studies which "prove she suffers from severe obstructive sleep apnea." *Id.* In response, the Commissioner contends that ALJ Gontis reasonably addressed Ms. Wilson's sleep apnea when he noted that she was diagnosed with obstructive sleep apnea after a sleep study, but

concluded that the evidence did not show this condition "caused symptoms of sufficient frequency and severity to significantly affect" Ms. Wilson's functioning. (Doc 28 at 12). The Commissioner contends that Ms. Wilson failed to show that her obstructive sleep apnea warranted additional mental limitations not already accounted for in ALJ Gontis's RFC assessment. *Id.* at 13.

   1. *The Sleep Apnea Evidence*

   In February of 2017, Ms. Wilson underwent a diagnostic sleep study which resulted in a polysomnogram report. (AR 2675). That night, Ms. Wilson experienced a total of "7 awakenings and 227 arousals," resulting in an average of "50 arousals and 1.5 awakenings per hour of sleep." (AR 2676). Ms. Wilson was only able to sleep for 274 minutes (approximately 4.57 hours), which she reported was typical. (AR 2676-2677) ("Patient reported slept same in laboratory as at home: light, unrefreshing sleep with 5 awakenings, rated bed comfort as 5/5."). Ms. Wilson also reported "[d]ifficulty with concentration and memory because of sleepiness," "difficulty falling asleep due to anxiety[,] racing thoughts[,] and pain," and an "[i]rresistible urge to move her legs when resting, that . . . often disrupts her sleep." (AR 2675). The resulting report, which is signed by Madeleine M. Grigg-Damberger, MD, includes a diagnosis of "severe obstructive sleep apnea-hypopnea syndrome," and a warning against driving until her "sleepiness" could be controlled. (AR 2679).

   In May of 2017, Ms. Wilson underwent a second sleep study, involving titration of continuous positive airway pressure ("CPAP"), which resulted in a polysomnogram report. (AR 2674). That night Ms. Wilson experienced a total of "13 awakenings and 160 arousals," and was only able to sleep 346 minutes (approximately 5.77 hours). (AR

2671). In the recommendations section, the report, which was signed by Frank M. Ralls, MD, states that "sleep restriction (not enough sleep) . . . can cause significant daytime sleepiness, depression, difficulty with concentration, and headaches." (AR 2673). The report also notes that Ms. Wilson responded positively to CPAP intervention in terms of improved oxygenation and fewer respiratory events. (AR 2672). This intervention took place only in 2017, which is after the relevant period, which ended before September 1, 2016. (2672).

### 2. ALJ Gontis's Discussion of Sleep Apnea Evidence

In determining Ms. Wilson's impairments, ALJ Gontis found that her obstructive sleep apnea is a non-severe impairment "because [it has] not affected and [is] not expected to affect the claimant more than minimally for a duration of twelve months or longer." (AR 2005). He indicated that he nonetheless considered the functional limitations resulting from this and all of Ms. Wilson's other non-severe medically determinable impairments. (AR 2005-06). ALJ Gontis later cited generally to exhibits 5F, 9F, 18F, and 24F for the proposition that Ms. Wilson suffers from gastroesophageal reflux disease (GERD), hypertension, diabetes mellitus, and obstructive sleep apnea. (AR 2008). He also stated:

> The evidence does not demonstrate that these impairments have caused symptoms of sufficient frequency and severity to significantly affect the claimant's functioning, whether individually or in combination with other impairments. Accordingly, the evidence of record does not support a finding that they would have more than a minimal effect on the claimant's ability to meet the basic demands of work activity . . .

(AR 2008). ALJ Gontis made no other reference to Ms. Wilson's sleep apnea or sleep studies.

*3. Whether ALJ Gontis's Discussion of Sleep Apnea Evidence Constitutes Error*

The purpose of the latest remand, according to the Appeals Council, was for the ALJ to consider the 390 pages of newly disclosed medical records from 2017-2019, including the evidence of severe sleep apnea. (AR 2118). The Appeals Council specifically noted that "these [new] records consistently report insomnia, poor sleep []quality, and inadequate overall sleep." (AR 2119). The Appeals Council directed ALJ Gontis to issue a decision on only the issue of disability prior to September 1, 2016. (AR 2120).

The Commissioner incorrectly contends that ALJ Gontis "noted that [Ms. Wilson] was diagnosed with obstructive sleep apnea after a sleep study." (Doc. 28 at 12). In fact, ALJ Gontis made no reference to either of her sleep studies. *See* (AR 2000-2014). He failed to directly mention the impact Ms. Wilson's ongoing sleep deprivation may have had on her depression, or her possible impairment while driving or performing other focused activities. *See* (AR 2000-2014). Rather, his only direct references to Ms. Wilson's severe obstructive sleep apnea are contained in two sentences of his decision, in which he lists her non-severe impairments. (AR 2005, 2008). Thereafter, he states only that "[t]he evidence does not demonstrate that these impairments have caused symptoms of sufficient frequency and severity to significantly affect the claimant's functioning, whether individually or in combination with other impairments." (AR 2008).

ALJ Gontis found Ms. Wilson suffers from depression, which according to her sleep doctor can be exacerbated by her severe obstructive sleep apnea. (AR 2673). The evidence regarding her sleep apnea was thus significant, probative evidence ALJ Gontis was required to discuss and weigh in order for substantial evidence to support

16

his findings. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (stating substantial evidence requires an ALJ discuss "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects," and the evidence supporting his decision) (citation omitted).

ALJ Gontis failed to mention either sleep study, despite the Appeals Council's specifically remanding the case for consideration of the new records. *See* (AR 2000-2014). ALJ Gontis thus erred in failing to discuss either of the sleep study reports or the severity of Ms. Wilson's obstructive sleep apnea, even to explain why he rejected it.

> ### 4.  Whether ALJ Gontis's Error Regarding the Sleep Apnea Evidence Constitutes Harmful Error

An ALJ's error may be considered harmless in exceptional circumstances, "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In the context of analyzing objective evidence, the Tenth Circuit "allow[s] the ALJ to engage in less extensive analysis where 'none of the record medical evidence conflicts with [his RFC] conclusion.'" *Wall v. Astrue*, 561 F.3d 1048, 1068-69 (10th Cir. 2009) (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). It is clear that "when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard*, 379 F.3d at 947.

> ### a.  The Effect of ALJ Gontis's Error on the Weighing of Opinion Evidence

First, ALJ Gontis's consideration of the medical source opinions may have been different had he properly considered the evidence regarding Ms. Wilson's sleep apnea.

17

For example, ALJ Gontis afforded "little weight" to Dr. Barger's March 23, 2020 opinion, as he had only treated Ms. Wilson for eight months, and also because he found Dr. Barger's conclusions "inconsistent with the medical evidence of record." (AR 2011). Dr. Barger opines, among other things, that Ms. Wilson suffers from sleep disturbance, in addition to paranoia, generalized anxiety, impulsive and damaging behavior, and other behavioral health symptoms. (AR 4098). ALJ Gontis failed to mention consistent evidence from the sleep apnea reports, including that Ms. Wilson reported often getting as few as four hours of sleep per night prior to her 2017 sleep studies, and that she reported having difficulty falling asleep due to "anxiety[,] racing thoughts[,] and pain." (AR 2675). ALJ Gontis failed to mention Dr. Grigg-Damberger's warning against driving until Ms. Wilson's "sleepiness" could be controlled. (AR 2679). He also failed to discuss Dr. Ralls's recommendation that sleep deprivation can cause problems including "depression, difficulty with concentration, and headaches." (AR 2673).

Had he considered these findings, ALJ Gontis may have afforded Dr. Barger's March 23, 2020 opinion different weight. He may have ultimately concluded that, in fact, sleep apnea did significantly exacerbate Ms. Wilson's depression and anxiety, which in turn exacerbated her sleeplessness in a self-perpetuating cycle, up until she was finally able to obtain treatment by way of CPAP after her sleep studies in 2017. (AR 2674). As a result, ALJ Gontis may have afforded more weight to Dr. Barger's opinion.

ALJ Gontis may also have afforded more weight to Dr. Gillies's opinion if he had properly considered the evidence for severe sleep apnea. ALJ Gontis also afforded "little weight" to Dr. Gillies's March 19, 2020 opinion, as he had only treated Ms. Wilson for about a year, and as ALJ Gontis found his conclusions "inconsistent with the medical

evidence of record." (AR 2011).

Dr. Gillies opines, for example, that Ms. Wilson suffers from sleep disturbance, in addition to panic attacks, generalized anxiety, and impaired impulse control, among other behavioral health symptoms, which is consistent with the sleep study records. (AR 2675, 4093). Dr. Gillies concurs with Dr. Barger that Ms. Wilson has "[n]o useful ability to function" when it comes to making simple work-related decisions, or dealing with normal work stress, in addition to several other severe work-related impairments. (AR 4094); *see also* (AR 4099). He elaborates that Ms. Wilson experiences "numerous overreactions to personal obstacles," "poor interpersonal relationships" and "dependent traits" among other problems. (AR 4094). This is consistent with Dr. Barger's opinion that Ms. Wilson tends to "decompensate" at even "minor offenses or accidents." (AR 4099). It is also consistent with her need for assistance from social workers to manage basic activities of daily living such as coordinating with her landlord. (AR 2938, 2944).

While Dr. Gillies also began treating Ms. Wilson after the period at issue, Dr. Gillies notes that Ms. Wilson did not show significant improvement in the past year of treatment, which is consistent with Dr. Barger's observations that medication has lacked efficacy, (AR 4092, 4097), and, notably, Dr. Barger's opinion that her condition has likely been of long duration, (AR 4101) (opining that Ms. Wilson's limitations have applied "[s]ince before 06/30/2010"). ALJ Gontis may thus have reached a different conclusion regarding Ms. Wilson's disability prior to September 1, 2016, if he had weighed Dr. Barger and Dr. Gillies's opinions differently in light of the evidence regarding severe obstructive sleep apnea.

### b. The Effect of ALJ Gontis's Error on the RFC Assessment

ALJ Gontis explained that he believed Dr. Barger's and Dr. Gillies' conclusions that Ms. Wilson "would miss more than four days of work a month, would be unable to make decisions or deal with stress, and would have no useful ability to function in a number of areas of mental functioning" were inconsistent with the treatment records. (AR 2011). The record does indeed show "mild to normal findings at mental status examinations," as ALJ Gontis states, (AR 2011), though the Court can locate only two in the record, (AR 2919, 3945-3946). Given the foregoing evidence, however, a reasonable factfinder could conclude, for instance, that Ms. Wilson may experience good days and bad days due to her sleep disturbances, which could account for some mild to normal findings while still resulting in her missing more than four days of work per month.

Given the foregoing evidence, a reasonable factfinder could conclude, despite the Commissioner's argument otherwise, that in combination with her other impairments, Ms. Wilson's severe sleep apnea could have caused her to miss more than four days of work. (AR 2679); *see also* (Doc. 28 at 12-13). Ms. Wilson's capacity for attendance is part of her RFC. *See* 20 C.F.R. §§ 404.1545(c), 416.945(c); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00E3; *see also Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979). The extent to which Ms. Wilson can work, and the ultimate question of disability, must be determined in light of that restriction. *See* 15 SSR 85-16, 1985 WL 56855, at *2. If ALJ Gontis had properly considered the sleep apnea evidence, he may have afforded more weight to Dr. Barger's and Dr. Gillies's opinions, resulting in a more

restrictive assessment of Ms. Wilson's mental RFC including a limitation on her capacity for attendance.

ALJ Gontis's failure to properly consider the sleep apnea evidence leaves the Court with no guidance to perform a meaningful review of ALJ Gontis's analysis of (1) the proper weight to afford the opinions of the medical sources on Ms. Wilson's mental limitations, or (2) Ms. Wilson's mental limitations in the context of her RFC. Therefore, ALJ Gontis's failure to properly consider the sleep apnea evidence, even merely to explain why he disregarded it, constitutes harmful and reversible error. *Ledford v. Barnhart*, 197 F. App'x 808, 811 (10th Cir. Oct. 19, 2006) ("The failure to apply the correct legal standard[s] or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.") (citations omitted). The Court thus finds that remand is appropriate. Because the Court finds these reasons alone constitute harmful error mandating remand, the Court will not address the parties' arguments regarding additional errors.

### B.  Ms. Wilson's Request for an Immediate Award of Benefits

Ms. Wilson asks the Court to remand this case for an immediate award of benefits retroactive to June 30, 2010, her date last insured, or earlier. (Doc. 25 at 26, 29). She argues that the Court should award immediate benefits for the relevant period because the case has been pending for nearly ten years, and it has been administratively remanded repeatedly. *Id.* She further argues that "the delay in awarding her benefits is unreasonable." *Id.*

The Commissioner, however, argues that because the Court should affirm ALJ Gontis's decision finding her disabled only as of September 1, 2016, she is not entitled

to an immediate award of benefits retroactive to her date last insured. (Doc. 28 at 19). The Commissioner further argues that even if the Court grants remand and reverses ALJ Gontis's decision, Ms. Wilson is not entitled to an immediate award of benefits for the relevant period because "the facts do not conclusively demonstrate that [Ms. Wilson] was disabled prior to September 1, 2016." *Id.* The Commissioner contends that additional fact-finding would thus be useful. *Id.*

In a Social Security case, it is within the Court's discretion to remand for an immediate award of benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). Courts consider (1) the length of time from the claimant's initial application for benefits that the case has been pending and (2) given the available evidence, whether or not remand for additional fact-finding would be useful or merely delay receipt of benefits. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). The Commissioner "is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion." *Sisco*, 10 F.3d at 746 (quotations omitted).

        i.     *Length of Time*

The parties agree more than nine years have passed since Ms. Wilson last applied for benefits. (Doc. 25 at 29); (Doc. 28 at 2). The parties also agree that this case has already been remanded four times for further proceedings, but only once by this Court. *Id.*; *see also generally Wilson v. Saul*, 2:19-cv-380 CG. Compared to other Social Security cases heard in this District, Ms. Wilson's case has indeed been pending for a lengthy period of time. *See*, *e.g.*, *Begay v. Barnhart*, 1:3-cv-692 RLP, 2006 WL 8443776, at *5 (D.N.M. Aug. 29, 2006) (awarding immediate benefits where case had

been pending only five years, with one prior remand). This long delay weighs in favor of remanding for an immediate award of benefits. *Salazar*, 468 F.3d at 626.

However, an immediate award of benefits is not warranted solely on the basis of the length of time the case has been pending. *See*, *e.g.*, *Winick v. Colvin*, 674 F. App'x 816, 823 (10th Cir. 2017) (finding "an eventual award of benefits is not foreordained on this record, and further administrative proceedings are appropriate to permit the Commissioner to properly weigh the evidence"). The Court will next consider whether remanding the matter for further fact-finding would be futile.

*ii.*     *Utility of Further Fact-Finding*

Ms. Wilson makes two arguments with regard to further fact-finding. First, she states that "the only real issue in dispute is whether [Ms. Wilson] was disabled as of her date last insured of 06/30/2010." (Doc. 29 at 9). Second, she argues that Dr. Barger opines that she has suffered disabling limitations since before her date last insured, and that there is no contradictory medical opinion of record. *Id.* Third, she contends that the administrative record contains a 2006 consultative examination from a psychologist, Dr. Shams, who testified that Ms. Wilson could not work. *Id.* Fourth, she argues that the administrative record, which contains over four thousand pages, is complete. *Id.*

The Commissioner points out that Ms. Wilson was only considered disabled after September 1, 2016, because of the Grid Rule 201.06, which directs a finding of disability when a claimant is a high school graduate with skilled or semiskilled work without transferrable skills, over 55 years of age, and has the RFC to perform less than the full range of light work. (Doc. 28 at 3). The Commissioner argues that the facts do not conclusively demonstrate that Ms. Wilson was disabled prior to that time, as she

23

was able to perform less than the full range of light work. *Id.* at 19. She also pointed out that there are no mental health treatment notes prior to 2014, and contends that the Court should therefore refrain from ordering immediate payment. *Id.*

The error at issue here involves ALJ Gontis's discussion of the sleep apnea evidence. (Doc. 25 at 26). As this error relates to new evidence presented to the Appeals Council for the first time in June of 2019, it is not the same error committed by the prior ALJs. *See* (AR 2120). The record contains numerous records, including evidence dating back as far as 2006, whose apparent contradictions will likely be resolved upon a proper assessment of the full record. For example, although the record contains evidence that Ms. Wilson has disabling mental limitations, the record also contains evidence that she responds to medication. (AR 2427, 2786). The record contains evidence that Ms. Wilson did not improve with therapeutic intervention, (AR 4092), but also evidence that she improved once she engaged in intensive treatment for bipolar disorder, (AR 2432, 2786). Properly assessing the full record, including the possible exacerbating effects of Ms. Wilson's previously uncontrolled severe obstructive sleep apnea on her bipolar disorder, will likely resolve contradictions like these. *See*, *e.g.*, *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (explaining that the ALJ is entitled to resolve any conflicts in the record).

Ms. Wilson cites *Serafin v. Berryhill*, 1:18-cv-1053 SMV, 2019 WL 3843051 (D.N.M. Aug. 15, 2019); *Rodriguez v. Saul*, 1:18-cv-927 MV/JFR (D.N.M. 2019); and *Quezada v. Berryhill*, 1:17-cv-1163 LF (D.N.M. 2019), for the proposition that the Court may grant immediate benefits where a plaintiff has been through several administrative hearings over many years. (Doc. 29 at 9). These cases are distinguishable.

24

In *Serafin v. Berryhill*, for example, the case had already been remanded twice by the Court, the second time with specific instructions from the Court on weighing opinion evidence, which the ALJ failed to follow in the third administrative decision. 2019 WL 3843051, at *2. Here, the Court has only remanded the case once, granting an unopposed motion for remand, and did not include any instructions. *See Wilson v. Saul*, 2:19-cv-380 CG (D.N.M. 2019) (Doc. 19); (Doc. 21). In *Rodriguez v. Saul*, the Court was "persuaded that when the treating physician opinion evidence is properly evaluated and weighed, there is no reasonable probability that [the claimant] would be denied benefits." *Rodriguez v. Saul*, 1:18-cv-927 MV/JFR (D.N.M. 2019) (Doc. 31 at 25); (Doc. 34 at 14). The Court is not so persuaded here.

Finally, in *Quezada v. Berryhill*, the case had been pending for a year longer, the Court had remanded it twice already, and the 52-year-old claimant was illiterate in English and was limited to sedentary work. *Quezada v. Berryhill*, 1:17-cv-1163 LF (D.N.M. 2019) (Doc. 25 at 14). Ms. Wilson, meanwhile, can read and write in English and ALJ Gontis found her limited to "less than the full range of light work," which is greater than sedentary work. (AR 2007).

In all three of these cases, the Court saw "no useful purpose in further fact-finding." *Serafin*, 2019 WL 3843051, at *7; *see Rodriguez*, 1:18-cv-927 MV/JFR (Doc. 31 at 25); (Doc. 34 at 14); *Quezada*, 1:17-cv-1163 LF (Doc. 25 at 14). Here, however, contradictory medical evidence exists in the record, which will likely be resolved with further proceedings. Additionally, Ms. Wilson waived personal appearance at one prior hearing, and her most recent hearing was conducted via telephone due to the covid-19

pandemic. (AR 10, 2002). The Court thus does not find that additional fact-finding would be futile.

The Court therefore will not remand for an immediate award of benefits, but instead for further proceedings. The Court shares Ms. Wilson's concern that remand risks creating a fifth opportunity for an ALJ to again err in their consideration of the record. (Doc. 22 at 2). For that reason, as well as the length of time since Ms. Wilson first applied for benefits, the Court will instruct the Commissioner to complete these proceedings on remand by no later than **January 30, 2022**. The Court will further instruct the Commissioner to properly consider the 390 pages of medical records dated January 10, 2017 through January 18, 2019, including the evidence of severe obstructive sleep apnea, and to specifically address Dr. Barger's opinion regarding the onset date.

## VI.    Conclusion

**IT IS THEREFORE ORDERED** that Ms. Wilson's *Opposed Motion to Reverse and/or Remand*, (Doc. 25), is **GRANTED** as to remand and **DENIED** as to an immediate payment of benefits. This case is **REMANDED** for further proceedings consistent with this Order**.**

**IT IS FURTHER ORDERED** that the Commissioner complete its proceedings on remand **by no later than January 30, 2022**.

**IT IS SO ORDERED**.

_____
 THE HONORABLE CARMEN E. GARZA
 CHIEF UNITED STATES MAGISTRATE JUDGE